MATTER OF PRIETO-PEREZ

In EXCLUSION Proceedings

A-13013535

*Decided by Board October 16, 1964*

A dual national of the United States and Mexico who, upon petition to the city government of Agua Prieta, Sonora, Mexico, in which he described himself as a Mexican, acquired title to property located in a border area in Mexico in which property ownership is limited to Mexican nationals did thereby voluntarily seek or claim the benefits of Mexican nationality within the meaning of section 350, Immigration and Nationality Act.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]— Immigrant without visa or passport.

The special inquiry officer found that the applicant was excludable upon the ground stated above and certified the case to the Board for final decision. Proceedings will be reopened.

The applicant, a 53-year-old single male born in the United States of America, became at birth a citizen of the United States and of Mexico. The Service contends that he lost United States citizenship by acquiring ownership of land in the city of Agua Prieta, Mexico, on November 24, 1952, and by continuing his ownership to the present time. The applicant's property is located in the border area in a zone where Mexican law limits ownership to Mexican nationals and prohibits it to non-Mexican nationals. The Service relies on section 350 of the Act (8 U.S.C. 1482 (1958)) which provides for the loss of United States nationality by a dual national who voluntarily sought or claimed the benefits of his foreign nationality.

Applicant's home has been in Mexico since he was taken there when about 3 years of age; he has been working in the United States since 1946.

On July 2, 1944, the applicant applied to the officers of the communal farm in Agua Prieta, Sonora, Mexico, for possession of a lot in the urban zone; possession, but not title, was awarded to him on September 30, 1944 (certificate of possession attached to Exhibit 15); on November 2, 1952, the applicant applied for title to the lot; in his application

he described himself as a Mexican (Ex. 14). Title was awarded to him by the city government on November 24, 1952; the award was made under the authority of "Law Number 25 of July 16, 1892, of the State, and Decree Number 43 of the State Government" (Ex. 15).

The applicant testified that during the lifetime of his father, the family lived on a ranch; that his father had always wanted to establish a home for the mother in the city; that in 1944 his father died; that the applicant and his mother moved to the town of Agua Prieta, Sonora, and using money his father had earmarked to provide a home, he (applicant) acquired land and built a house; and that he and his mother (she died in 1963) lived in it.

The special inquiry officer found the applicant had become expatriated because ownership of the land after December 24, 1952, the effective date of section 350 of the Act, constituted a continuing claim to the benefits of Mexican nationality. Counsel contends expatriation did not occur.

Counsel's contention that the burden of proof was placed upon the applicant is not justified by the record. The burden of establishing that the applicant lost United States citizenship is upon the Service; the Service can carry its burden by coming forward with a preponderance of the evidence showing that the loss occurred; the previous standard requiring clear and convincing proof—a standard which counsel believes should apply here, was supplanted by section 349(c) of the Act (8 U.S.C. 1481(c) (Supp. IV)).

Counsel points out that applicant acquired his land before December 24, 1952, when section 350 of the Act went into effect; he contends it would be unconstitutional to take away the applicant's United States citizenship for an act committed before the adoption of section 350. The contention must be rejected. When ownership of land by dual national occurred before December 24, 1952, and the ownership was the result of a claim to Mexican nationality, we hold that expatriation occurs if the owner failed within the 3 years after December 24, 1952, to use the means provided by Congress (abandonment of Mexican residence) to avoid loss of citizenship· (*Matter of Sanchez-Monreal*, Int. Dec. No. 1361; *Matter of V—*, 7 I. & N. Dec. 218; *Matter of G—Q—*, 7 I. & N. Dec. 195). We do not believe that our view constitutes an *ex post facto* application of the law because Congress did afford the individual concerned a period of 3 years after the effective date of the Act within which he could have preserved his United States nationality.

Counsel contends that the savings clause (section 405(a) of the Act, 8 U.S.C. 1101 n. (1958)) prohibits application of section 350 to the instant case. The savings clause does not apply, in our opinion, because it was applicant's conduct arising after the effective date of the

Act (failure to abandon Mexican residence) which resulted in loss of United States citizenship. Moreover, there having been no statute governing the right to accept benefits of foreign nationality prior to December 24, 1952, under which applicant could have acquired a status, we fail to see how a savings clause which merely continued in effect statutes otherwise repealed by the Act of 1952, could apply to the applicant.

Counsel contends that applicant did not lose United States citizenship because in taking title he acted as a trustee for his mother. The record does not establish this claim; moreover, if taking as trustee required the taker to claim the benefits of Mexican nationality, it appears to us, loss would result under section 350 of the Act.

It is conceded that the land owned by the applicant lies in the area where non-Mexican nationals are prohibited from owning land; counsel however contends that non-Mexican nationals nevertheless do acquire land in the prohibited area despite the constitutional prohibition. Counsel offered no evidence to support his contention. Even if the situation described by counsel existed, the question determinative of the issue in any case is whether the dual national involved made use of his Mexican nationality to obtain the right to own the land; this fact must be proved in each case.

Counsel contends that the record fails to establish that the applicant intended to divest himself of United States citizenship. The intent of the applicant in this regard is not material. The act causes expatriation to occur, upon proof that the benefit of foreign nationality was voluntarily claimed. Intention is not an element.

The question then before us is whether the record establishes by a preponderance of the evidence that the applicant "voluntarily sought or claimed benefits" of Mexican nationality. On such a question, carrying with it the grave consequence of expatriation, mere proof of ownership of land in an area where ownership is restricted to Mexican nationals does not constitute substantial evidence that a claim to Mexican nationality was in fact made in a particular case. Some proof that the claim was made must be advanced (*Matter of Sanchez-Monreal, supra*). We think that such evidence is found here in the fact that the applicant's petition addressed to the city government requesting that title be assigned to him described *him as a Mexican* (Ex. 14). The combination of the two factors—the legal requirement that the owner be a Mexican national, and the fact that the person seeking ownership asserted that he is a Mexican national, establishes in the absence of evidence to the contrary that a claim to Mexican nationality was made.

We shall reopen the proceedings because this is an expatriation case and the record fails to show what considerations in making the grant

the city government was required to observe under "Law Number 25 of July 16, 1892, and the Decree Number 43 of the State Government" (Ex. 15).

Counsel objects to the consideration of a prehearing statement made by the applicant. We do not find counsel's objection valid; however, we shall not discuss it since we have not considered the statement in any manner adverse to the applicant.

**ORDER:** It is ordered that proceedings be reopened for such further action as the special inquiry officer may deem appropriate, and which is not inconsistent with what we have stated above.

*It is further ordered* that the order of the special inquiry officer be certified to the Board.