MATTER OF SOLIS-BUENDIA

In Deportation Proceedings

A-17303412

*Decided by Board February 20, 1970*

A dual national of the United States and Mexico at birth who, claiming
Mexican nationality, purchased land in Mexico in an area where only
Mexicans may acquire title, did not thereby lose his United States citizen-
ship under section 350 of the Immigration and Nationality Act, since
there is no evidence of an intent to relinquish United States citizenship
nor of the commission of acts in derogation of allegiance to the United
States. [*Matter of Prieto-Perez*, 10 I. & N. Dec. 740 (BIA, 1964), su-
perseded.]

CHARGE:

Order: Act of 1952—Section 241(a)(1) [8 U.S.C. 1251(a)(1)]—Excluda-
ble at time of entry under section 212(a)(20)—no
immigrant visa.

ON BEHALF OF SERVICE: Irving A. Appleman
Appellate Trial Attorney
(Memorandum submitted)

The question is whether respondent's ownership of land in
Mexico resulted in his expatriation under section 350 of the Act
(8 U.S.C. 1482).

The special inquiry officer terminated proceedings and certified
the case to the Board. We held decision in abeyance pending a
statement of interpretation by the Attorney General concerning
expatriation. The statement was issued on January 23, 1969, 34
Fed. Reg. 1079 (1969). A Service memorandum of law dated
June 27, 1969, asks the Board to affirm the special inquiry
officer's order of termination. We shall do so.

The respondent, a 39-year-old married male, born in Mexico to
United States citizen parents, was a citizen of both the United
States and Mexico at birth. Since his parents lived in the United
States prior to his birth, no question concerning acquisition and

retention of United States citizenship exists because the birth was outside the United States.

Before 1953, respondent lived and worked in Mexico. In 1953, he came here as a United States citizen. Thereafter, he worked here, but until 1964 daily commuted to his home in Mexico, except when he worked too far away from home to commute—a period of about four months each year. In December 1964, he moved his home to the United States.

In 1960, respondent bought land in an area in Mexico where only Mexicans may acquire title. Respondent claimed Mexican nationality when he bought the property. Under such circumstances we have held that United States citizenship is lost under section 350 of the Act, *Matter of Prieto-Perez*, 10 I. & N. Dec. 740 (BIA, 1964). Our ruling in such a case was made without consideration of whether the individual voluntarily abandoned United States citizenship. We thought it enough that he did an act which could be described by the provisions of an expatriatory statute. In other words, we did not think it material to determine whether he showed a desire to abandon United States citizenship or whether his act was in derogation of allegiance to the United States. However, the Attorney General's statement analyzing *Afroyim* v. *Rusk*, 387 U.S. 253 (1967), reveals that in a case such as this, expatriation will not result unless there is an intent to transfer or abandon allegiance, or the commission of an act which is in derogation of allegiance to the United States.

Applying the principles in the Attorney General's statement to the instant case we conclude that expatriation is not established. The record shows no more than that the respondent bought land in Mexico in an area where only Mexican nationals could hold title. There is no evidence of an intent to relinquish United States citizenship or the commission of acts in derogation of allegiance to the United States. We find the proceedings were properly terminated.

In view of the action we have taken, we find it unnecessary to determine whether the respondent's residence after December 25, 1952 was such that it would have brought him within the provisions of section 350. We do note for the record, however, the care taken, by both the special inquiry officer and the trial attorney, in creating a record which would fairly reflect the facts on this issue.

**ORDER:** No change is made in the order of the special inquiry officer.

MATTER OF DUGGAN

In Exclusion Proceedings

A-18558057

*Decided by Board February 20, 1970*

In the absence of a specific authorization by the Secretary of State and the Secretary of Defense to enter into or serve in the Armed Forces of Canada, applicant's service in the Royal Canadian Navy with the intention of voluntarily relinquishing his citizenship resulted in the loss of his United States citizenship under section 349(a)(3) of the Immigration and Nationality Act.

EXCLUDABLE: Act of 1952—Section 212(a)(20) [8 U.S.C. 1182(a)(20)]—Immigrant without immigrant visa.

These exclusion proceedings have been certified to us by the special inquiry officer for final decision. In the proceedings, the special inquiry officer held that the applicant, formerly a United States citizen, had expatriated himself under section 349(a)(3) of the Immigration and Nationality Act and he was ordered excluded and deported from the United States as an immigrant without an immigrant visa.

The applicant is a 36-year-old divorced male who was born at Sault Ste. Marie, Michigan on September 1, 1933 and who acquired United States citizenship by reason of his birth in the United States under section 1 of the Fourteenth Amendment to the United States Constitution. After several visits to Canada he became a landed immigrant in Canada on January 4, 1953. Thereafter, on September 15, 1953 he enlisted in the Royal Canadian Navy and served therein until March 2, 1954 when he was dishonorably discharged for misconduct (Ex. 6). On the day of his joining the Canadian Armed Forces he took an oath of allegiance to Her Majesty Queen Elizabeth II.

Applicant testified that ever since 1946 he has desired to make permanent home in Canada and to become a citizen of that country because he has many relatives there and he liked the country and was always able to obtain suitable employment dur-

ing the several periods he resided there. He further testified that when he joined the Royal Canadian Navy and took the oath of allegiance to the Queen he thought that this would result in the loss of his United States citizenship, a result he desired. He stated that after he had joined, he was informed by United States immigration officials that since he did not have the written permission of the Secretary of State and the Secretary of Defense he should immediately terminate his service or he would face a loss of his citizenship (Tr. of hearing, p. 3). He did not terminate his service at that time. The record also shows that recently, in 1968, he applied to the United States consul at Halifax, Nova Scotia, Canada for a certificate of loss of United States citizenship and filed an affidavit with the consul relative thereto (Ex. 5).

These exclusion proceedings arose in the following manner. From November 14, 1955 until March 1966 the applicant was imprisoned in a Michigan State penitentiary for the crimes of kidnapping and gross indecency. He was released on parole, but on October 4, 1968 he was arrested by the police in Pontiac, Michigan on the charge of disorderly molesting, which arrest resulted in the violation of his parole status. Two days after the arrest he entered Canada where, on December 13, 1968, he was arrested by the Halifax police on suspicion of violating their firearms laws, but no charges were filed. The arrest, however, did reveal his criminal record in the United States. Accordingly, the police turned him over to the Canadian immigration authorities for deportation to the United States to be remanded to the Michigan State Bureau of Pardons and Paroles as a parole violator. Exclusion proceedings were instituted when he was brought to Detroit for entry into the United States.

Let us first examine the claim that applicant's United States citizenship was lost under section 349(a)(3) of the Immigration and Nationality Act by reason of his service in the Royal Canadian Navy in 1953 and 1954. Section 349(a)(3) provides as follows:

Sec. 349. (a) From and after the effective date of this Act a person who is a national of the United States whether by birth or naturalization, shall lose his nationality by— * * *

(3) entering, or serving in, the armed forces of a foreign state unless, prior to such entry or service, such entry or service is specifically authorized in writing by the Secretary of State and the Secretary of Defense.

The constitutionality of this provision was upheld in *Marks* v. *Esperdy*, 377 U.S. 214 (1964), and this Board held in *Matter of D—*, 5 I. & N. Dec. 674 (BIA, 1954), that expatriation under this section is avoided only when there is specific authorization by the

Secretary of State and the Secretary of Defense to enter into or serve in the armed forces of a foreign state.

It is undisputed that the applicant served in the Royal Canadian Navy. No claim has been advanced that any authorization for such service was given by the Secretary of State and the Secretary of Defense. The final matter to consider in deciding whether the applicant expatriated under section 349(a)(3) is to determine if he "voluntarily relinquished" his citizenship as required under the doctrine set forth in *Afroyim* v. *Rusk*, 387 U.S. 253 (1967). The court stated in that case that the Congress lacks power under the Constitution to expatriate a citizen unless the citizen *voluntarily relinquishes* his citizenship. Although the *Afroyim* case concerned expatriation under section 349(a)(5), Immigration and Nationality Act, by voting in a foreign political election, the principle stated in *Afroyim* is to be taken into account in considering expatriation under other sections of law.[1]

On January 18, 1969 the Attorney General of the United States issued a Statement of Interpretation [2] to serve as a guide to both the Department of State and the Immigration and Naturalization Service in the performance of their functions insofar as they involve questions of loss of citizenship. He stated:

Under any reading of *Afroyim*, however, it is clear that an act which does not reasonably manifest an individual's transfer or abandonment of allegiance to the United States cannot be made a basis for expatriation.

For administrative purposes, and until the Courts have clarified the scope of *Afroyim*, I have concluded that it is the duty of executive officials to apply the act on the following basis. "Voluntary relinquishment" of citizenship is not confined to a written renunciation . . . It can also be manifested by other actions declared expatriative under the act, if such actions are in derogation of allegiance to this country. Yet even in those cases, *Afroyim* leaves it open to the individual to raise the issue of intent . . . The voluntary performance of some acts can be highly persuasive evidence in the particular case of a purpose to abandon citizenship. Yet some kinds of conduct, though within the proscription of the statute, simply will not be sufficient to support a finding of voluntary expatriation.

For instance, it is obviously not enough to establish a voluntary relinquishment of citizenship that an individual accepts employment as a public school teacher in a foreign country. This I have already decided in the case of a dual national, *Matter of Sally Ann Becher*, 12 I. & N. 380; Interim Decision No. 1771 (August 21, 1967).

A similar approach may be taken with respect to service in a foreign army, depending upon the particular circumstances involved . . . In each case the administrative authorities must make a judgment, based on all the

---

[1] *Opinion of the Attorney General of the United States*, Vol. 42, Op. 34 969).

[2] *Opinion of the Attorney General of the United States, supra.*

492

evidence, whether the individual comes within the terms of an expatriation provision *and* has in fact voluntarily relinquished his citizenship.

There is no dispute that the applicant in the case before us did voluntarily serve in the armed forces of a foreign state. We think that the evidence of record is abundantly persuasive that this applicant, with the clear and subjective intent to transfer and abandon his allegiance to the United States, voluntarily relinquished his citizenship by entering and serving in the Royal Canadian Navy. He testified that he desired by this means to transfer his citizenship and he believed that this result was accomplished by his service.

We hold that expatriation did take place under section 349(a)(3) of the Act. Having so determined, it is unnecessary to consider whether applicant also expatriated under section 349(a)(2) as one who took an oath of allegiance to a foreign state, or under section 349(a)(6) as one who made a formal renunciation of nationality before a consular officer of the United States in a foreign state.

The record indicates that if this Board finds that the applicant is excludable, the Immigration and Naturalization Service plans to parole him into the United States to serve further time in prison as a parole violator, after which he will be deported to Canada (Tr. of hearing, pp. 22, 23). Canada has gone on record that they will accept him as a deportee under the terms of a reciprocal agreement between the United States and Canada (Ex. 4).

We will thus affirm the decision of the special inquiry officer that the applicant be excluded and deported from the United States as an immigrant without an immigrant visa.

ORDER: It is ordered that no change be made in the order of the special inquiry officer that the applicant be excluded and deported from the United States.